## Hetrick v. Hartman (No. 1)

*Robert E. Knupp* and *William H. Kain*, for plaintiff.
*William W. Hafer*, for defendant.

ANDERSON, J., July 14, 1951.—This issue comes before the court on defendant's preliminary objections filed to plaintiff's complaint. A brief résumé of the complaint indicates that William E. Hartman, husband of defendant, Mable O. Hartman, died at the home of his daughter in 1950, leaving no estate. He and his wife owned a property in New Market as tenants by the entireties, title to which passed to his wife upon his death. The daughter notified her mother of the father's death, but his wife made no arrangements for burial which were made with plaintiff by the daughter. Plaintiff has now brought suit against the widow for the funeral expenses now due in the amount of $360.

The legal questions raised by the objections are as follows:

(a) Where a husband leaves no estate, is his widow, who makes no contract with the undertaker for decedent's burial, liable to the undertaker for the reasonable and customary charges for such services rendered by the undertaker?

(b) Where arrangements for the funeral of a decedent husband are made by a third party after the widow of such decedent fails to make such arrangements, can the widow be bound by the acts of such third party rendering her liable to the undertaker for the reasonable and customary charges made for the undertaker's services?

For more than 100 years, beginning with the early English case of Chapple v. Cooper, 13 Mees & Wells 252, 153 English Reprint Reports 105 (1844), it has been held that a widow, even an infant widow in this instance, is liable for the funeral expenses of her deceased indigent husband, not because of her contract with the undertaker which would be subject to the defense of infancy, but because public policy and the principle of necessaries so dictate.

Jackson on the Law of Cadavers, page 85, sums up the general rule in this statement:

"Where there is no estate, expediency and logic dictate an obligation upon the person liable to furnish necessaries during life. . . . Though a wife's separate estate ordinarily has no liability for her husband's funeral expenses, where there is no other source of payment, the wife is charged with the cost of burial."

This rule generally has been followed in Pennsylvania for many years for in Fox v. Gordon, 16 Phila. 185 (1883), we find this pertinent statement:

"It is undoubtedly the duty of the husband to bury the deceased wife and of the wife to bury the deceased husband." Not only is this the duty imposed at common law but our comparatively recent statutes relative to support of indigents have buttressed this principle. The Support Law of June 24, 1937, P. L. 2045, sec. 3, 62 PS §1973, provides:

"The husband, wife . . . of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the Court of the County, where such indigent person resides, shall order or direct."

This statute has been interpreted by various courts as meaning just what the wording implies. See McGlothan v. Pennsylvania R. Co., 72 F. Supp. 176; Nolan v. Nolan, 29 Berks 91; Department of Public Assistance v. DeCarli, 44 D. & C. 291; Department of Public Assistance v. Palmer et al., 45 D. & C. 590.

Defendant contends that there is no privity of contract between plaintiff and defendant. At first blush upon reading the complaint this contention would seem to be sound, but upon considered reflection it becomes very apparent that under the circumstances a contract is implied by law. The A. L. I. Restatement of the Law of Restitution, §115, is authority for the principle that one who performs the duty of another

by supplying things or services is entitled to restitution from the other, although acting without the other's consent, if he acted unofficiously and with intent to charge therefor and the things or services supplied were immediately necessary to satisfy the requirements of public decency, health or safety. This principle is confirmed in 2 Am. Jur. §23, Agency, in this statement:

"In some situations agency may be created by necessity, i.e., the emergency arising from a particular situation making it necessary or proper for the agent to act without receiving the sanction or authority of the principal in the matter."

This doctrine has been consistently followed in Pennsylvania.

"An undertaker is justified in furnishing the necessary service upon the request of anyone so related to the decedent as to exclude the idea of officious interference": Hodge v. Cameron, 132 Pa. Superior Ct. 1. See also Kanai v. Sowa, 109 Pa. Superior Ct. 426.

A very recent case from the bellwether State of Massachusetts well expresses and delineates the proper application of the law in this type of situation. In this case, Green v. Horton, 326 Mass. 503, 95 N. E. (2d) 537 (1950), the facts were briefly as follows: Edna Green, daughter of decedent by a former marriage, with whom decedent lived for 12 years subsequent to separation from decedent's husband, asked an undertaker to get the body of her mother and handle the services in connection with burial. Defendant husband had been notified of decedent's death. Plaintiff paid the undertaker, took an assignment and then sued defendant husband for his wife's funeral expenses, the wife having left no estate. In holding the husband liable for the funeral expenses the court stated:

"It was not necessary for the plaintiff to show that there was an express contract or one implied in fact.

Recovery in cases of this sort is permitted on the basis of a contract implied in law. In Magrath vs. Sheehan, 296 Mass. 263, it was recognized that a husband could be held liable for the funeral expenses of his wife, the court saying at pages 264-265, 'The duty of a husband to provide a proper funeral for his dead wife and his legal liability to another for reasonable expense justifiably incurred in providing such a funeral rest upon fundamental concepts of decency and humanity. Such a liability is not imposed upon the theory of an actual contract either express or implied in fact. It arises if at all by implication of law "from the necessity of the case".' See Durrell vs. Hayward, 9 Gray, 248; Cunningham vs. Reardon, 98 Mass. 538; Constantinides vs. Walsh, 146 Mass. 281; and annotation in 108 A. L. R. 1226. The plaintiff, therefore, did not have to prove the existence of any contractual relations between Johnson and the defendant."

An analogous case to the one at bar is found in the Ohio reports where the court concludes that a widow is responsible for her husband's funeral expenses where the husband leaves no estate even though the wife is incapable of making a contract, in this instance because of mental incapacity. The court stated:

"The question for the court to determine in this case is whether the wife's estate is liable for the funeral expenses of her deceased husband when he leaves no estate and in case she has not personally contracted the obligation.

"The fact that she was under disability at the time her husband died and at the time the services were rendered eliminates the possibility that she could in any way be bound by contract. Therefore, the facts in this case present a clear-cut issue as to whether the wife's estate can be held for the reasonable funeral expenses of her deceased husband who left no estate . . .

"After a close consideration of the decisions with reference to the reciprocal rights and obligations of the husband and the wife, especially with reference to the obligations of the surviving spouse to provide a decent burial for the deceased spouse, and bind his or her estate for the expenses incurred incident to such burial, and their mutual obligations and responsibilities by virtue of Sections 7995, 7996 and 7997, General Code of Ohio, the court finds that on the broad ground of necessity and on the broader ground of public policy, it was the duty of Mary Wilmuth Milholland to take charge of the body of her deceased husband and to see that it was given decent burial. Since she was not able to contract, being under disability, the court finds that her estate is liable for the reasonable expenses incurred in such burial, since her deceased husband left no estate whatsoever": In re Guardianship of Mary Wilmuth Milholland, 30 Ohio Nisi Prius Reports, New Series 563. See also In re Scalzo, 39 D. & C. 377.

It seems quite apparent from a careful consideration of the case law in Pennsylvania and elsewhere that a widow is under a legal duty to defray the reasonable expenses of her indigent deceased husband's funeral. This duty is based on numerous valid considerations briefly stated as follows: (1) Public policy and common decency; (2) duties and obligations arising from the marriage contract relationship; (3) the enlarged rights of married women under the modern emancipation statutes of Pennsylvania and the corresponding obligations which are concomitant thereto; (4) the modern provisions of Pennsylvania's Support Law which places upon the wife the duty to support an indigent husband and the logical deduction therefrom that this duty extends beyond death and covers the decent and proper burial of the husband.

Under such circumstances a contract in fact with the undertaker is not necessary to bind her, but such a

contract is implied by law, especially where the person making the arrangements with the undertaker bears a family relationship to the deceased, and the widow, after notice, takes no steps to provide the interment. This rule would seem to be especially applicable in the instant case where the deceased owned property by the entireties with his wife which immediately passed to her on his death. It is therefore obvious that defendant's preliminary objections must be dismissed and the following order is entered:

And now, to wit, July 14, 1951, the preliminary objections to plaintiff's complaint filed on behalf of defendant on May 11, 1951, are herewith overruled and dismissed and defendant is allowed 20 days within which to file an answer on the merits.